UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| V. | § § | NO. 1:21-CR-235 (01)(RC) |
| RICHARD FRANKLIN BARNARD III | § § | |

**SENTENCING MEMORANDUM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE RUDOLPH CONTRERAS:

Now comes the Defendant, RICHARD FRANKLIN BARNARD III, by and through counsel, Jesús M. Salinas, Jr., hereby presents to the Court the *Defendant's Sentencing Memorandum*.

On February 4, 2022, Mr. Barnard, pursuant to a guilty plea, will appear before this Court to be sentenced for the petty offense of *Parading, Demonstrating, or Picketing in a Capitol Building* in violation of 40 U.S.C. §5104(e)(2)(G). Mr. Barnard respectfully requests, after considering all the relevant factors, including 18 U.S.C. §3553(a), the Court impose a sentence of time served, $500 in restitution, and a $10 special assessment fee. In support of his Sentencing Memorandum Mr. Barnard submits the following, including:

- Attachment A—Character Letters
- Attachment B—Photos and Video Stills captured by Mr. Barnard

I.  **Preliminary Statement**

Every sentence imposed in federal court must be "sufficient, *but not greater than necessary*" to satisfy the statutory purposes of sentencing, regardless of the applicable guidelines. 18 U.S.C. § 3553(a) (emphasis added); *see Gall v. United States*, 552 U.S. 38, 43-44 (2007); *United States v. Booker,* 543 U.S. 220, 245-46 (2005). Regardless of the applicable sentencing range

1

under the guidelines, the sentencing court should impose a sentence which is substantively reasonable, considering the factors set forth in Section 3553(a), as they apply to the particular case. *Gall,* 552 U.S. at 47-48. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (quoting *Koon*, 518 U.S. at 113).

## II.  LEGAL PRINCIPLES

Pursuant to §1B1.9 of the United States Sentencing Guidelines, the sentencing guidelines do not apply to Class B misdemeanor offenses. This Class B misdemeanor petty offense carries a maximum penalty of six months imprisonment and a maximum fine of five thousand dollars, in addition to a ten-dollar special assessment. See 18 U.S.C. §19; 40 U.S.C. §5109(b); 18 U.S.C. §3571(b)(6).

Mr. Barnard has received and reviewed the Pre-Sentence Report ("PSR") prepared for the Court, as well as the Sentencing Recommendation of 24 months of probation, 100 hours of community service. Mr. Barnard disagrees with the sentence recommendation as greater than necessary for the unique facts and circumstances his case presents. Mr. Barnard, a 56-year-old man with zero criminal history, is worthy of a time served sentence in this case. While the nature and circumstances of the January 6 events were indeed serious, his particular and unique circumstances and overt actions that day, paired with his individual history and characteristics do not suggest a need for further supervision or punishment. Rather, a sentence of time served with

restitution, would more than adequately meet the purposes of sentencing under 18 U.S.C. §3553(a).

While the U.S. Sentencing Guidelines do not apply to this defendant, this court is still required to consider the sentencing factors outlined in 18 U.S.C. § 3553(a) in determining the appropriate sentence. The factors this Court is to consider are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed to reflect the for primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
(3) The kinds of sentences available (e.g., whether probation is prohibited or a mandatory minimum term of imprisonment is required by statute);
(4) The sentencing range established through application of the sentencing guidelines and types of sentences available under the guidelines;
(5) Any relevant "policy statements" promulgated by the Sentencing Commission;
(6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) The need to provide restitution to any victims of the offense.

While the sentencing court has discretion over imposing an appropriate penalty, Congress has placed limits. For example, a term of imprisonment cannot be imposed or lengthened for rehabilitative purposes, see 18 U.S.C. § 3582 (a) and 28 U.S.C. § 944(k); and, a sentence upon revocation of supervised release cannot be imposed for retributive purposes, see 18 U.S.C. § 3583€. *See also Tapia v. United States*, 131 S.Ct. 2382 (2011). An appropriate sentence is defined as "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)]." 18. U.S.C. § 3553.

### III.     ARGUMENT

a. Nature and Circumstances of Mr. Barnard's Offense

Mr. Barnard voluntarily met with FBI agents on or about January 25, 2021 without benefit of counsel, without immunity, or other promises. Throughout his interview Mr. Barnard was

cooperative, honest, forthcoming, and expressed remorse and regret for the events that transpired January 6, 2021. PSR ¶¶ 26-26a. He was arrested on Criminal Complaint by Federal Agents at his place of employment on February 25, 2021; and spent two days in custody before being released on bond February 26, 2021. PSR Pg. 1. Prior to being indicted Mr. Barnard expressed his willingness to plead guilty and accept responsibility for his conduct on January 6, 2021. On March 19, 2021, a Federal Grand Jury in Washington D.C., returned a five-count Indictment charging Mr. Barnard with four separate counts. PSR ¶¶ 1-2. He pled guilty as soon as it was made possible pursuant to a plea agreement on October 20, 2021. PSR ¶ 5.

Mr. Barnard's role in the offense is detailed throughout PSR ¶¶18-27. Mr. Barnard would further direct the Court's direction to paragraphs 40-51a of the PSR and the probation office's sentencing recommendation for details outlining his personal history and characteristics.

      b. <u>The Need to Afford Adequate Deterrence to Criminal Conduct</u>

Rehabilitation and specific deterrence, in this case, have been achieved through arrest, pretrial supervision with conditions, and a year-long prosecution. Mr. Barnard has been on pretrial supervision with restrictions from the court for approximately one year. Mr. Barnard has complied with all of his conditions. The interests of justice do not require additional public resources be expensed in supervising Mr. Barnard. This is Mr. Barnard's first involvement with the criminal justice system. Specific deterrence has been accomplished through time spent in custody, losing employment, pretrial supervision, and an order of restitution.

      c. <u>A Sentence of Time Served Would Not Create An Unwarranted Sentencing Disparity</u>

Sentences for the petty offense of unlawfully protesting inside the Capitol have ranged from a fine with two months of probation to incarceration, community service, and up to five years of probation. See (anticipated) Appendix to Government's Sentencing Memorandum. Mr. Barnard

is incomparable to other January 6 defendants already sentenced for petty offenses. His conduct remains unique, which calls for a unique sentence. He used his body as a shield to protect US Capitol Police Officers (at least one has been identified as US Capitol Police Officer Juan Lopez) and did everything in his power to suppress the forceful and dangerous acts of others. Mr. Barnard stayed faithful to his convictions and loyal to his principles. He didn't join others that chose violence at our United States Capitol. Mr. Barnard will forever be linked to January 6 and the horrific acts perpetuated that day. He expressed these fears during his voluntary interview with FBI Agents. He feared getting arrested at work. He feared losing his job. He feared his actions would hurt his family. He feared being linked to those that chose violence and destruction. FBI Agents informed Mr. Barnard, because of his cooperation, he had no reason to worry about getting arrested at work or losing his job. Excerpts of that interview show:

> FBI Agent: "They would probably say hey we have this arrest warrant you have to surrender, we're reasonable, we did this last week, somebody surrendered to us. We're not in the business of embarrassing people or kick down doors because we can. If you're being cooperative, we're going to work with you. You and [co-defendant], you guys have been cooperative."
>
> Mr. Barnard: "I'm not afraid of what y'all are going to do to me. I'm afraid of what comes afterwards. When you all are done with us. What's going to come after that. That's what gets me. I bust my ass every day, go to work."
> ------------------------------------------------------------------------
> FBI Agent: "…any attorney is going to look favorably at someone who is cooperating, trying to help us, we have had a lot of issues with others not forthcoming and helping us."
>
> Mr. Barnard: "That's just stupid on their part. Like I said, we weren't going there to go up against officers, in any remote, we were looking for people that were going against officers. I told my wife, for some reason I was supposed to be in that building. Cause I would never have gone in that building but for some reason I was supposed to be there. Was it to protect officers? Was that why I was supposed to be there in that building? ……... What reason was I in that building because I never would have gone. I figure there had to be a reason I would be in there. Am I going to pay for it the rest of my life? I don't know yet. I just don't know yet."
> ------------------------------------------------------------------------
> Mr. Barnard: "I didn't hurt anybody, didn't intend to hurt anybody. I defended some people."

> FBI Agent: "Some people that were there made bad decisions that made you all look bad."

---

Mr. Barnard's fears came true. He was arrested at his place of employment. He was fired. He was blackballed by future employers and financial institutions. He is forever linked to atrocities of January 6 and he will have to continue to live that burden. You will not find social media postings made by Mr. Barnard in regard to January 6. Not before, not after. Mr. Barnard has made no attempt to normalize the events that took place at our United States Capitol. He has, and continues to feel, embarrassment and shame for himself, his family, and Country. Mr. Barnard understands the need for this Court to impose a sentence on him and will respect that decision.

### IV.   CONCLUSION

A sentence of time served with $500 restitution for Richard Franklin Barnard III is sufficient but not greater than necessary for the petty offense Class B misdemeanor *Parading, Demonstrating, or Picketing in a Capitol Building* under 40 U.S.C. §5104(e)(2)(G). This is Mr. Barnard's first arrest and only criminal conviction. Additionally, Mr. Barnard's mitigating relevant conduct includes using his body as a human shield to defend Capitol Police Officers and others, while commanding others to refrain from violent behavior.

> Respectfully submitted,
>
> MAUREEN SCOTT FRANCO
> Federal Public Defender
>
> /s/ JESÚS M. SALINAS, JR.
> Assistant Federal Public Defender
> Western District of Texas

Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24057366
*Attorney for Richard Franklin Barnard III*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I have sent an electronic copy to the following:

Brandon Regan
Assistant U.S. Attorney
District of Columbia U.S. Attorney's Office
Brandon.Regan@usdoj.gov

Aidee Gavito
US Probation
Aidee_Gavito@dcp.uscourts.gov

/s/  JESÚS M. SALINAS, JR.