UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | NO. 1:21-CR-235 (01)(RC) |
| § | |
| RICHARD FRANKLIN BARNARD III § | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE RUDOLPH CONTRERAS:

Now comes the Defendant, RICHARD FRANKLIN BARNARD III, by and through counsel, Jesús M. Salinas, Jr., hereby presents to the Court the *Defendant's Response to Government's Sentencing Memorandum*.

On January 24, 2022, the Government filed its *Sentencing Memorandum* including a request that this Court sentence Mr. Barnard to "thirty days home detention, 36 months' probation, 60 hours of community service and $500 in restitution." Dkt. No. 38. The Government's recitation of Mr. Barnard's actions and involvement, as outlined in its Memorandum, includes misrepresentations and inaccuracies compared to the discovery provided as well as the parties agreed *Statement of Offense* filed October 20, 2021. Dkt. No. 23. Mr. Barnard will attempt to respond to each identifiable inaccuracy as efficiently as possible.

Page 1-2: The Government's (1) he entered the U.S. Capitol building with a large crowd of rioters; (2) he was aware of the fact that he was not authorized to be inside the building, evidenced by witnessing other rioters forcibly entering the building, despite law enforcement efforts to keep them out; (3) he penetrated into the Crypt portion of the U.S. Capitol, where violence between rioters and law enforcement was occurring around him…" "coming to the aid of a law enforcement officer inside the U.S. Capitol building when the scene turned violent inside

the Crypt." The *Statement of Offense* filed by the Government page 3, paragraph 9 states: "At approximately 2:02 p.m., Barnard and Witcher enter the U.S. Capitol building with a large crowd." Dkt. No. 23. Mr. Barnard disagrees with this description by the Government as it doesn't comport with the evidence provided in discovery. The evidence further points that violence began between law enforcement and was not ongoing upon Mr. Barnard's entrance into the Crypt. Once violent acts began to transpire, Mr. Barnard and others came to the aid of more than one officer.

Page 3: "renders a term of home detention both necessary and appropriate in this case." Mr. Barnard disagrees that home detention is "necessary and appropriate." Any length of home detention would cause Mr. Barnard to lose another job. As the sole income provider for his household this would serve as punishment to not only him but his family. This punishment would have unwarranted consequences.

Page 3: "Shortly thereafter, at approximately 2:19pm, Barnard and Witcher joined a large crowd of rioters making entry into the U.S. Capitol near the Rotunda portion of the building, ultimately making their way to the Crypt." Mr. Barnard would again direct the Court to the *Statement of Offense* filed by the Government at the time of Mr. Barnard's guilty plea, page 3 paragraph 9: "After attending the rally, mentioned above, Barnard and Witcher walked to the U.S. Capitol. At approximately 2:02 p.m., Barnard and Witcher entered the U.S. Capitol building with a large crowd."

Page 4: "Shortly after this both Witcher and Barnard came to the aid of a U.S. Capitol Police Officer who was caught in the mob of rioters, which at this point had turned violent…" As provided in discovery, notes from interview with U.S. Capitol Police Officer Juan Lopez reflect that Officer Lopez described that he and other officers (at least 4 others) were drawn in and protected and shielded by Mr. Barnard and others. Officer Lopez describes Mr. Barnard as acting

<u>as a human shield. Officer Lopez provided the quote presumably from Mr. Barnard, "Hey Lopez, you did your job, you did good…stay back here we won't let anything happen to you."</u> Due to Mr. Barnard and others stepping in protecting Officer Lopez, he was able to continue to protect Members of Congress. Officer Lopez was subsequently honored for his actions by the City of Coachella.[1]

*Richard Barnard's Interview*:

Page 5: "Barnard stated that when they arrived at the Capitol he believed there were already people attempt to make forcibly entry into the building." This information is taken from an "FBI FD-302" that summarized Mr. Barnard's interview. That report indicates that "The below is an interview summary. It is not intended to be a verbatim account and does not memorialize all statements made during the interview. Communications by the parties in the interview room were electronically recorded. The recording captures the actual words spoken." A review of the recorded interview with Mr. Barnard indicates that the information as provided in FBI FD-302 is taken out of context and a mischaracterization. <u>Mr. Barnard's recorded statement provides that it was later that day/evening of January 6, 2021 when watching the news, he was able to determine that upon entrance on Capitol grounds and the Capitol building there had once been barricades and others  attempting to use force to enter restricted areas.</u>

Page 5: "Barnard allowed law enforcement to access his phone, however no relevant photos or videos were found." This is different from the Statement of Facts filed with the Original Complaint that stated: "No videos or photos could be recovered from the [Mr. Barnard's] device." Dkt. No. 1-1. <u>Photos and videos from Mr. Barnard's phone were shared with FBI Agents at his interview January 25, 2021. These digital images were shared in discovery and are relevant in that</u>

---

[1] *See attached:* City of Coachella Proclamation.

<u>they corroborate Mr. Barnard's statements to law enforcement as an accurate recollection of events from his point of view. These recordings indicate a lack of violence or obstructions leading up to entrance onto the U.S. Capitol grounds and inside the U.S. Capitol building.</u>

*The Charges and Plea Agreement*

Page 5: "On February 25, 2021, he was arrested at his home in Texas." This is inaccurate. <u>According to an FBI FD-302 Mr. Barnard was not arrested at home, rather he was arrested on a jobsite in Georgetown, Texas in front of co-workers. Several FBI Agents with the assistance of Williamson County Sheriff's Office planned and executed the arrest of Mr. Barnard while at work. Mr. Barnard was fired from this job due to his public arrest. Upon arrest and transport to Blanco County Jail Mr. Barnard again waived counsel, waived Miranda warnings, and voluntarily answered Law Enforcement Officers questions and provided truthful and accurate information. At approximately the same time Mr. Barnard was being arrested at his job, FBI Agents (approximately 14 total officers and specialists) searched his home pursuant to a search warrant. The following items were deemed relevant and seized by law enforcement: Red "USMC" baseball cap, Blue/Tan plaid jacket, "Trump" neck gaiter, Black I-phone. No other contraband was found. No evidence of criminality was found. Mr. Barnard had been nothing but compliant with law enforcement and would have invited them into his home and consented to search.</u>

Page 6: "…the Section 3553(a) factors weigh in favor of home detention." Mr. Barnard disagrees with the Government's position. <u>Home detention would ultimately cause Mr. Barnard to lose his job and force him to search for another. Which has not been easy given the amount of media attention this case has received. For all the reasons stated in his Sentencing Memorandum would argue that the 3553(a) factors weigh against home detention or any period of confinement. Mr. Barnard does not disagree or argue with the seriousness of the events that transpired at our</u>

<u>Nation's Capitol Building but urges this Court to look at the particular and individualized mitigating factors his case presents.</u>

Page 7: "…did so under most extreme of circumstances…--at a minimum—have crossed through numerous barriers and barricades and heard the throes of mob." <u>This is a generalization which is not supported by the facts or evidence of Mr. Barnard's case.</u>

Page 7: "(5) whether during or after the riot, the defendant destroyed evidence." <u>Mr. Barnard admitted to deleting photos from his phone when he heard from his wife the atrocities that occurred. He didn't want to be associated with those that committed acts of violence against others. He didn't post on social media. He didn't applaud those that did. He didn't attempt to minimize or rationalize the behavior of others.</u> <u>The digital evidence that he destroyed proves what he readily and voluntarily admitted to and pled guilty to.</u>

Page 8: "Barnard entered the building, with a large group or rioters, at approximately 2:19p.m…." <u>Mr. Barnard would again refer the Court to page 3, paragraph 9 of the *Statement of Offense* filed by the Government in this case which states: "At approximately 2:02 p.m., Barnard and Witcher enter the U.S. Capitol building with a large crowd."  Dkt. No. 23.</u> The Government makes generalizations not based in the evidence provided in discovery that "he would have seen the forcible entry, and law enforcement's attempts to prevent the rioters from entering." <u>This statement is not supported by the facts and evidence of Mr. Barnard's case.</u> The Government's assertion: "Moreover, Barnard approached the building after acknowledging that he believed other rioters were attempting to forcibly enter the building," <u>is an inaccurate representation of Mr. Barnard's recorded voluntary statement made to law enforcement officers.</u>

Page 8: "His voluntary decision to storm a guarded government building is particularly problematic in light of his former military service and training." <u>This statement by the Government</u>

is not supported by the evidence provided in discovery and the particular facts of this case. What is clear is that upon witnessing violent acts Mr. Barnard stepped up to protect officers by using his body as a human shield as well as making statements to the crowd to the effect of "Keep it Peaceful! Keep it Peaceful!"

The Government mentions Mr. Barnard's military service as an aggravating factor for the Court to consider. Mr. Barnard would argue the opposite. Mr. Barnard's military training and values allowed him to provide safety to Officers. Mr. Barnard still lives by the U.S. Marine Corp. motto *Semper Fidelis—Always Faithful*. Mr. Barnard was faithful to officers on January 6. He came to their defense which is a distinguishable factor from others already sentenced for similar offenses.

Page 14-15: Mr. Barnard does agree with the Government that "no previously sentenced case contains the same balance of aggravating and mitigating factors present here…" As stated in Defense's *Sentencing Memorandum*, Mr. Barnard's case is unique. Mr. Barnard provides even further mitigation than the case that the Government cites as closely comparable: *See U.S. v. Thomas Gallagher*, 1:21-CR-0041 (CJN). In that case the Court did not sentence Mr. Gallagher to a period of home detention, rather a probationary period with community service and restitution.

On January 5, 2022, the eve of the one year anniversary of January 6—United States Attorney General Merrick Garland provided a live address. Here is a brief excerpt:[2]

"In circumstances like those of January 6th, a full accounting does not suddenly materialize. To ensure that all those criminally responsible are held accountable, we must collect the evidence.

We follow the physical evidence. We follow the digital evidence. We follow the money.

But most important, we follow the facts — not an agenda or an assumption. The facts tell us where to go next.

---

[2] For full text see: https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-remarks-first-anniversary-attack-capitol

> Over 40 years ago in the wake of the Watergate scandal, the Justice Department concluded that the best way to ensure the department's independence, integrity, and fair application of our laws — and, therefore, the best way to ensure the health of our democracy — is to have a set of norms to govern our work.
>
> The central norm is that, in our criminal investigations, there cannot be different rules depending on one's political party or affiliation. There cannot be different rules for friends and foes. And there cannot be different rules for the powerful and the powerless.
>
> There is only one rule: we follow the facts and enforce the law in a way that respects the Constitution and protects civil liberties..."

Richard Franklin Barnard is asking the Government and this Court to follow the facts of his individual case. Mr. Barnard's cooperation with the investigation began of his own free will and accord. In his voluntary interview on January 19, 2021, co-defendant Shane Witcher declined to state the name of Mr. Barnard; his friend, a fellow marine, and longtime associate, but reached out to Mr. Barnard to see if he wanted to contact the FBI. Mr. Barnard agreed and reached out to the FBI as soon as possible to begin cooperating with law enforcement in their investigation. Mr. Barnard voluntary met with FBI Agents at their offices. Mr. Barnard voluntary waived his right to counsel. Mr. Barnard voluntary waived his rights to access to his cell phone and I-cloud account. Mr. Barnard accepted responsibility for his conduct as soon as possible. Mr. Barnard showed, and continues to show remorse for his actions.

## CONCLUSION

The basis and argument for the Government's request for a sentence of thirty days home detention, 36 months' probation, 60 hours of community service and $500 in restitution contains misrepresentations, generalizations, and inaccuracies when examining their memorandum with the evidence provided in discovery. Mr. Barnard suggests the Court to look at the *Statement of Offense* filed by the Government in this case. Mr. Barnard understands the severity and seriousness of the events that occurred January 6 and the difficult task this Court has in assessing punishment. Mr. Barnard would respectfully request the Court examine the unique facts, particular acts, and extraordinary circumstances his case presents.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ Jesús M. Salinas, Jr.
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24057366
*Attorney for Richard Franklin Barnard III*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I have sent an electronic copy to the following:

Brandon Regan
Assistant U.S. Attorney
District of Columbia U.S. Attorney's Office
Brandon.Regan@usdoj.gov

Aidee Gavito
US Probation
Aidee_Gavito@dcp.uscourts.gov

_____
/s/ Jesús M. Salinas, Jr.